# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:23-cv-00004-MR-WCM

| | | |
|---|---|---|
| CHEVY BOOK; | ) | |
| CHRISTIAN BOOK; | ) | |
| DARIUS T. GIPSON; | ) | |
| DAMIEN A. BARRIOS; | ) | |
| JAMES O. KING; | ) | |
| MELVIN LAVALL, SR.; | ) | |
| MELVIN LAVALL, JR.; | ) | |
| LARICIA LEDENT; | ) | |
| KARA BULLOCK; | ) | **MEMORANDUM AND** |
| KAREN PETTY; | ) | **RECOMMENDATION** |
| BYRON RICHARDSON; and | ) | |
| FREDERICK RICHARDSON | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| INDUSTRIAL SERVICES | ) | |
| GROUP, INC. | ) | |
| *doing business as* | ) | |
| *Universal Blastco,* and | ) | |
| BLUE RIDGE PAPER | ) | |
| PRODUCTS LLC | ) | |
| *doing business as* | ) | |
| *Evergreen Packaging,* | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on "Universal Blastco's Motion to Dismiss Pursuant to Rule 12(b)(6)" (Doc. 32). The Motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

1

## I.  Procedural Background

On January 6, 2023, Chevy Book, Christian Book, Darius T. Gipson, Damien A. Barrios, James O. King, Melvin Lavall, Sr., Melvin Lavall, Jr., Laricia Ledent, Kara Bullock, Karen Petty, Byron Richardson, and Frederick Richardson (collectively, "Plaintiffs") filed their Complaint against Industrial Services Group, Inc. d/b/a Universal Blastco ("Blastco"), and Blue Ridge Paper Products LLC d/b/a Evergreen Packaging ("Evergreen").  Doc. 1.[1]

On April 18, 2023, Evergreen filed a Motion to Dismiss and a supporting memorandum. Docs. 30, 31.

On April 20, 2023, Blastco filed its Motion to Dismiss. Doc. 32.

Plaintiffs filed a combined response in opposition to both motions on May 2, 2023. Doc. 36.

Each Defendant subsequently replied. Docs. 44, 45.

On August 31, 2023, a hearing on both motions to dismiss was scheduled for September 13, 2023.

On September 7, 2023, Plaintiffs filed a Stipulation of Dismissal with Prejudice as to their claims against Evergreen. Doc. 54.

---

[1] Subject matter jurisdiction is based on 28 U.S.C. § 1332. At the time Plaintiffs' Complaint was filed, the individual plaintiffs were citizens of either Louisiana or Arkansas, Blastco was alleged to be a citizen of South Carolina, and Blue Ridge was a citizen of Delaware. See Docs. 1, 52, 55.

During the hearing on September 13, 2023, the Court noted that the Stipulation of Dismissal had not been executed by Blastco and directed that a substitute closing document be filed, as appropriate. In addition, the Court heard from the parties regarding the unsealing of documents that were previously sealed, <u>see</u> Doc. 46,[2] and heard arguments on Blastco's Motion to Dismiss.

On September 18, 2023, Plaintiffs filed a "Voluntary Dismissal with Prejudice as to Plaintiffs' Claims Against Defendant Blue Ridge Paper Products LLC d/b/a Evergreen Packaging." Doc. 59.

## II. Plaintiffs' Allegations

On September 21, 2020, Curtis Elmer Butler Jr. ("Butler"), Brett Burgueno ("Burgueno"), and Plaintiffs were employees of "Rimcor" and were working at Evergreen's facility in Canton, North Carolina (the "Facility") "scaling and 'blasting' the D2 Downflow tank/tower" (the "Downflow Tank"). <u>Id</u>. at ¶¶ 11, 12, 15. Plaintiffs Chevy Book and Christian Book are alleged to be the stepchildren of Butler; Plaintiff Damien Barrios ("Barrios") is alleged to be the stepson of Burgueno. <u>Id</u>. at ¶ 19. The Downflow Tank is a 150 to 200-foot-tall tank used to store bleached supplies, such as pulp, to make paper. <u>Id</u>. at ¶ 14.

---

[2] A separate Order relative to the unsealing of these documents is being issued simultaneously.

While Plaintiffs were working on the Downflow Tank, employees of Blastco were working "with resin and fiberglass in the Upflow tank/tower" (the "Upflow Tank"), which was connected to the Downflow Tank by way of an "access tunnel." Id. at ¶¶ 11, 15, 17.[3]

Plaintiffs allege upon information and belief that a Blastco employee was using a "heat gun" to "loosen the resin for the fiberglass to adhere to the side of the Upflow Tank more easily" and, while doing so, dropped the heat gun into a vat of resin that ignited and caused an "immense fire and an enormous amount of smoke." Id. at ¶ 16.

At the time, "Rimcor employees" were working "in and around" the Downflow Tank. Id. at ¶ 17.[4] As a result of the fire in the Upflow Tank, smoke rapidly filled the Downflow Tank and the fire spread there through the access tunnel. Id. at ¶ 17.

"The smoke and flames spread so rapidly that within minutes the fire overtook" Butler and Burgueno, who "could not breathe because of the smoke,"

---

[3] Plaintiffs' Complaint does not identify Rimcor further or explain whether Rimcor had been retained by Evergreen or Blastco. Other information in the record, but that does not appear in the Complaint, indicates that both Rimcor and Blastco were hired by Evergreen to perform maintenance work at the Facility. See Doc. 36-2 at ¶ 1.

[4] Plaintiffs do not identify these employees specifically or describe where each employee was located. However, it appears that Butler and Burgueno were inside the Downflow Tank, while other employees, presumably including Plaintiffs, were working "around" the Downflow Tank.

could not escape from the Downflow Tank, and "were ultimately burned to death." Id. at ¶¶ 17-18.

Evergreen had "rescue personnel" on site but they did not attempt to enter the Downflow Tank until the fire was put out. Id. at ¶ 20.

Plaintiffs were "all at the scene of the fire," attempted to rescue Butler and Burgueno, and witnessed their deaths. Id. at ¶ 19.

Plaintiffs have asserted a single claim of negligent infliction of emotional distress against Blastco.

## III. Legal Standards

### A. Rule 12(b)(1)[5]

A motion to dismiss made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether the court has subject-matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1). One federal court in North Carolina has explained that "[w]here a settlement agreement has previously disposed of a claim, the claim is moot," and therefore the court lacks "subject-matter jurisdiction over the claim, and a Rule 12(b)(1) motion invoking the settlement agreement must be granted." Staffing Advantage LLC v. Definitive Staffing Sols., Inc., Case No. 7:20-cv-00150-M, 2021 WL 2426340, at *3 (E.D.N.C. June 14, 2021); see also Casimir v. Bridgecrest Credit Company,

---

[5] Even though the Motion was initially made pursuant to Rule 12(b)(6), Blastco subsequently indicated it was also relying on Rule 12(b)(1). Doc. 44 at 6, n. 3.

LLC, No. 20-CV-274-JPS-JPS, 2021 WL 3081017, at *4 (W.D. Wis. July 21, 2021) (finding that a plaintiff released "all known and unknown claims" against the moving defendants such that his claims against the moving defendants were moot, and dismissing such claims for lack of subject matter jurisdiction); Lindell v. Landis Corp. 401(K) Plan, 640 F. Supp. 2d 11, 14 (D.D.C. 2009) (construing defendants' 12(b)(6) motion for failure to state a claim as a motion pursuant to 12(b)(1) because "[c]laims that have been resolved by earlier settlement agreements, and therefore present no ongoing controversy, are moot"); Majkowski v. Am. Int'l Grp., Inc., No. 08 CV 4842, 2008 WL 5272193, at *4 (N.D. Ill. Dec. 16, 2008) (dismissing the plaintiff's claims pursuant to Rule 12(b)(1) because "[t]he settlement agreement is a valid and enforceable document that binds the parties and moots [the plaintiff's] claims against [the defendant]").

## B. Rule 12(b)(6)

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

6

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## IV. Evergreen's Motion to Dismiss

As noted above, on September 18, 2023, Plaintiffs voluntarily dismissed their claims against Evergreen with prejudice. Doc. 59.

Accordingly, Evergreen's Motion to Dismiss is no longer pending.

## V. Blastco's Motion to Dismiss

Blastco seeks the dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6).

7

In addition, Blastco contends that Barrios' claim has been released by way of a settlement agreement. Because this argument implicates subject matter jurisdiction, it is addressed first, below.

### A. Barrios' Claim

On September 12, 2022, a wrongful death action was filed by the administrators of the estates of Butler and Burgueno. See Burgueno et al v. Industrial Services Group, Inc. et al, No. 1:22-cv-00196-MOC-WCM (the "Wrongful Death Action").

On December 6, 2022, a Certification of Mediation Session was filed which indicated that a settlement conference had been conducted on November 28 – 30, 2022, and that the Wrongful Death Action had settled completely. Wrongful Death Action, Doc. 26.

On March 2, 2023, a Stipulation of Dismissal was filed in the Wrongful Death Action dismissing all claims in that matter with prejudice. Wrongful Death Action, Doc. 36.

Here, Blastco argues that the Confidential Release and Settlement Agreement (the "Settlement Agreement") that resolved the Wrongful Death Action also bars the claim Barrios asserts in the instant case. A redacted copy of the Settlement Agreement has been filed under seal. Doc. 29.[6]

---

[6] Evergreen is also being directed to file an additional redacted copy of the Settlement Agreement on the public docket.

8

The introductory paragraph of the Settlement Agreement states that it was entered "by and between Nicole Burgueno, administrator of the Estate of Brett Burgueno and all other persons, personal representatives, heirs, assignees, firms or corporations who might claim through Nicole Burgueno, as administrator of the Estate of Brett Burgueno, Edmund J. Burgueno, III, Barbara Burgueno, Gina C. Cole, and Damian Barrios" (collectively, the "Settling Party") on one hand and Blastco, and Evergreen on the other.

In the recital section, the Settlement Agreement states that the Settling Party filed a civil action "styled '*Nicole Burgueno, administrator of the Estate of Brett Burgueno, and Shannon Butler, administrator of the Estate of Curtis Butler vs. Industrial Services Group, Inc., d/b/a Universal Blastco, and Blue Ridge Paper Products LLC d/b/a Evergreen Packaging*' (Docket number 1:22-cv-196) (the 'Complaint') regarding an accident and fatalities on September 21, 2020 at the Canton Mill (the 'Claims')" and that the parties were seeking to settle the "dispute between them" according to the terms of the Settlement Agreement.

The Release and Discharge section includes the following provisions:

> … the Settling Party hereby releases, acquits, and forever discharges the Blastco Parties and the Evergreen Parties of and from any and all past, present, and future actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, including claims or suits for contribution

9

and/or indemnity, of whatever nature, related attorneys' fees, rights, damages, costs, losses of service, expenses and compensation of any nature whatsoever, whether based in tort contract or other theory of recovery, which the Settling Party now has or which may hereafter accrue or otherwise be acquired, on account of, or *may in any way grow out of, or which are the subject of the Claims, or losses of any kind or nature whatsoever including, but not limited to, claims for negligent or intentional infliction of emotional distress or any other form of emotional, mental or psychological injury arising from or in any way related to the Claims.*

¶ 1(a) (emphasis added).

The Settling Party acknowledges and agrees that the *release and discharge set forth above is a general release.* The Settling Party expressly waives and assumes the risk of any and all claims for damages which exist as of this date, including those which the Settling Party does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect the Settling Party's decision to enter into this Agreement. The Settling Party further agrees that this Agreement is a complete compromise of matters involving disputed issues of law and fact. The Settling Party assumes the risk that the facts or law may be other than the Settling Party believes.

¶ 1(c) (emphasis added).

"[t]he Settling Party further promises and covenants that they, individually, will not bring, cause to be brought, and fully and *completely waives any right to bring any lawsuit or other legal claim in any court or jurisdiction in the United States against the Blastco Parties and the Evergreen Parties for any claims related to or arising from the Claims.*"

¶ 1(d) (emphasis added).

Blastco contends that these provisions are unambiguous, and that Barrios has released his claim for emotional distress.

Barrios disagrees. First, he contends that the definition of "Claims" is ambiguous, and, therefore, that the language of the release and discharge section is likewise ambiguous such that the Court may consider extrinsic evidence when construing the Settlement Agreement.[7] Second, Barrios argues that the extrinsic evidence reveals that Barrios released only his claims in the Wrongful Death Action, to the extent he had any such claims.

"A settlement agreement is a contract governed by the rules of contract interpretation and enforcement." Williams v. Habul, 219 N.C.App. 281, 289 (2012); see also Harris v. Ray Johnson Const. Co., 139 N.C.App. 827, 829 (2000) ("A compromise and settlement agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts"). Consequently, "[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." Hartford Accident & Indem. Co. v. Hood, 226 N.C. 706, 710 (1946) (citations omitted). When "the language of a contract is clear and unambiguous,

---

[7] To support this position, Barrios relies on a footnote in the Settlement Agreement which states that "[t]he Claims do not include the Blastco Claims as defined herein." Barrios correctly points out that, despite this footnote, the Settlement Agreement does not include a definition of the "Blastco Claims."

construction of the contract is a matter of law for the court." <u>Hagler v. Hagler</u>, 319 N.C. 287, 294 (1987).

Here, the release language of the Settlement Agreement is clear and unambiguous. The Settlement Agreement specifically identifies Barrios as an individual included within the definition of "Settling Party," provides that the Settling Party releases "any and all past, present, and future actions, causes of action, claims, [and] demands… including but not limited to, claims *for negligent or intentional infliction of emotional distress* or any other form of emotional, mental or psychological injury arising from or *in any way related to the Claims*," and characterizes the release as a "general release." Introductory paragraph; ¶ 1(a) (emphasis added); ¶ 1(c). The Settlement Agreement also states that the Settling Party "waives any right to bring any lawsuit or other legal claim…against the Blastco Parties … for any claims *related to or arising from the Claims*." ¶ 1(d) (emphasis added).

Accordingly, the Settlement Agreement does not release only "Claims." Rather, it releases actions, causes of action, claims, and demands of any kind that are "in any way related to" the Claims and expressly includes terms that cover Barrios' claim for negligent infliction of emotional distress. <u>See Maxwell Foods, LLC v. Smithfield Foods, Inc.</u>, 2021 NCBC 50, 2021 WL 3811610, at * 4 ("Courts 'must take language as it is and people as they are. All agreements

have some degree of indefiniteness and some degree of uncertainty.'") (quoting Carolina Helicopter Corp. v. Cutter Realty Co., 263 N.C. 139, 146 (1964)).

The undersigned will therefore recommend that Barrios' claim for negligent infliction of emotional distress be dismissed without prejudice. Staffing Advantage LLC, 2021 WL 2426340; S. Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013) (A dismissal for lack of subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

### B. Failure to State a Claim

"To sustain a claim for negligent infliction of emotional distress, 'a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) *it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress* ..., and (3) the conduct did in fact cause the plaintiff severe emotional distress.'" Newman v. Stepp, 376 N.C. 300, 304 (2020) (quoting Johnson v. Ruark Obstetrics, 327 N.C. 283, 304 (1990) (emphasis in Newman)).

Here, Blastco argues that Plaintiffs cannot satisfy the foreseeability element.[8]

---

[8] During the September 13, 2023 hearing, counsel for Blastco confirmed that the Motion to Dismiss challenges only this element.

"[A] plaintiff may recover for his or her severe emotional distress arising due to concern for another person, *if* the plaintiff can prove that he or she has suffered such severe emotional distress as a proximate and foreseeable result of the defendant's negligence." Johnson, 327 N.C. at 304 (emphasis in Johnson). The North Carolina Supreme Court has explained that "[f]actors to be considered on the question of foreseeability ... include the plaintiff's proximity to the negligent act, the relationship between the plaintiff and the other person for whose welfare the plaintiff is concerned, and whether the plaintiff personally observed the negligent act." Id. at 305.

These factors, though, "are not mechanistic requirements," and the "presence or absence of such factors simply is not determinative in all cases." Sorrells v. M.Y.B. Hosp. Ventures of Asheville, 334 N.C. 669, 672-673 (1993). Rather, "the question of reasonable foreseeability under North Carolina law must be determined under all the facts presented, and should be resolved on a case-by-case basis by the trial court and, where appropriate, by a jury." Id.; see also Derose v. Doordash, Inc., No. 5:22-CV-413-D, 2023 WL 3840655 (E.D.N.C. June 1, 2023) (granting motion to dismiss a negligent infliction of emotional distress claim brought by parents of decedent); Sanders v. Duke Energy Carolinas, LLC, No. 3:20-CV-215-KDB-DSC, 2022 WL 282567, at *3 (W.D.N.C. Jan. 31, 2022) (granting motion to dismiss claim for negligent infliction of emotional distress as a result of flooding of personal residence); see also Wrenn

v. Byrd, 120 N.C. App. 761, 765 (1995) ("Although the question of foreseeability is generally for the jury, the trial judge is required to dismiss the claim as a matter of law upon a determination that the injury is too remote.").

In some instances, courts have concluded that sufficient evidence of foreseeability has been alleged. For example, in Newman, a two-year-old child was fatally shot at the defendants' residence, where the defendants were providing childcare in an unlicensed daycare, when another child somehow discharged a loaded shotgun that had been left on the kitchen table. In discussing the issue of foreseeability, the North Carolina Supreme Court explained:

> Fundamentally, here the concept of the foreseeability of the infliction of emotional distress resulting from defendants' negligent act of leaving a loaded and unsecured shotgun in an unattended state within reach of a group of young children—as compared to the foreseeability of a defendant father inflicting emotional distress upon the mother for the alleged negligent act of having a traffic accident which killed their passenger son in *Gardner*, the foreseeability of the infliction of emotional distress resulting from defendant motor vehicle operator's alleged negligent act in killing an expecting mother and causing the baby to be stillborn because defendant swerved to avoid a collision with a third vehicle in *Andersen*, and the foreseeability of the infliction of emotional distress upon the parents of an adult son who was killed in the operation of his motor vehicle after defendant business committed the allegedly negligent act of serving alcoholic beverages to the son of plaintiffs during his patronage of defendant business—is a measure of foreseeability indisputably governed by the factors

15

which this Court articulated in *Johnson* which is necessary for a jury to determine in light of the "case-by-case basis" premised upon "all the facts presented" which this Court expressly discussed in *Sorrells.*

Newman v. Stepp, 376 N.C. 300, 311–12 (2020) (discussing Gardner v. Garnder, 334 N.C. 662 (1993); Andersen v. Baccus, 335 N.C. 526 (1994); Johnson, 327 N.C. 283 (1990); Sorrells, 334 N.C. 669 (1993)).

The court went on to conclude that the parents of the deceased child had adequately alleged that their severe emotional distress was reasonably foreseeable, holding "that the foreseeability factor of Johnson does exist in the case at bar because defendants have knowledge of plaintiffs' existence, there is the prospect of plaintiffs suffering severe emotional distress, and defendants were able to know the identity of the fatally injured party…." Id. at 312–13; see also id. at 312 (noting that "plaintiffs and defendants knew each other to such a degree that plaintiffs allowed their young child to spend appreciable amounts of time in defendants' home").

Similarly, in Cauley v. Bean, 282 N.C. App. 443, 448 (2022), *review denied*, 876 S.E.2d 281 (N.C. 2022) (Mem), 876 S.E.2d 289 (N.C. 2022) (Mem), the North Carolina Court of Appeals held that a plaintiff's allegations were sufficient, at the pleading stage, to establish reasonable foreseeability of emotional distress where she had been cycling with her father and two friends, and had witnessed the defendant, who was driving erratically, strike her father head on (resulting in his ejection from his bicycle onto the road and ultimately

16

his death) and flee the scene. The court noted that "the direct victim and person for whose welfare Plaintiff was concerned was Plaintiff's father," the plaintiff's allegations "of close proximity to Defendant's negligent act and that she personally observed the negligent act," and that the decedent was hit "head on," ejected onto the roadway, and that the defendant "fled the scene" all weighed in favor of foreseeability. Id.

In other cases, plaintiffs have failed to make the necessary showing of foreseeability. For example, the court in DeRose for Est. of DeRose v. DoorDash, Inc., No. 5:22-CV-413-D, 2023 WL 3840655, at *7 (E.D.N.C. June 1, 2023) held that the parents of an adult pedestrian who was killed when he was struck by a meal delivery driver did not state a claim for negligent infliction of emotional distress, where the plaintiffs were in Mexico when the accident occurred and arrived at the hospital several hours later, such that they did not observe the negligent act. Id. Further, the court noted that the plaintiffs failed to plausibly allege that the defendants knew the plaintiffs or the decedent. Id.

Likewise, in Riddle v. Buncombe County Board of Educ., 256 N.C. App. 72 (2017), the North Carolina Court of Appeals held that alleged severe emotional distress was not reasonably foreseeable for the plaintiff, a student athlete who witnessed a fellow member of his high school football team drive a John Deere motorized vehicle "at an unsafe and excessive rate of speed" and run over another "teammate and friend" who died as a result. The court noted

17

that prior cases involving bystander claims "all involved close familial relationships," and that the allegation that the defendants "knew plaintiff and [decedent] 'as fellow teammates and friends'" was insufficient to suggest the "pair shared an unusually close relationship." Id. at 77.

Here, Plaintiffs allege that "[i]t was reasonably foreseeable that [Blastco's] conduct" would cause Plaintiffs severe emotional distress because Blastco employees "worked in close proximity to all Plaintiffs" and Blastco "could easily observe that Plaintiffs knew one another and the deceased and that witnessing the death of a known person is objectively traumatic." Doc. 1 at ¶ 29. Plaintiffs further allege that they were the "family members and long-time friends and co-workers" of Butler and Burgueno and were "in close proximity" to Blastco's "negligent acts." Id. at ¶¶ 30, 31. However, these allegations do not sufficiently support the foreseeability element of a negligent infliction of emotional distress claim.[9]

Plaintiffs allege that they were working at the Facility at the time of the incident, attempted to rescue Butler and Burgueno, and witnessed their

---

[9] During the September 13, 2023 hearing, Plaintiffs' counsel stated that Plaintiffs could, if necessary, amend their Complaint to allege additional specific facts regarding each Plaintiff. Plaintiffs, though, have not moved to amend their complaint. Further, the undersigned notes that Plaintiffs previously filed a similar complaint in the Middle District of North Carolina and dismissed that action on January 7, 2022 following the filing of motions to dismiss. Book et al. v. Industrial Services Group, Inc. et al., No. 1:21-cv-00674-LCB-JEP.

deaths, <u>id</u>. at ¶ 19, but numerous details of these events are not provided, including where each Plaintiff and Butler and Burgueno were located when the fire started, what each Plaintiff personally observed, over what period of time Plaintiffs attempted to rescue Butler and Burgueno and what those rescue attempts entailed, which Plaintiffs observed that Evergreen had rescue personnel on site and that those persons did not attempt to enter the Downflow Tank until the fire was out, and which Plaintiffs (if any) spoke with rescue personnel. <u>See</u> <u>Sanders</u>, 2022 WL 282567 at *3 (finding an allegation that all plaintiffs suffered severe emotional distress that was reasonably foreseeable was too conclusory, especially because plaintiffs failed "to include any particularized allegations describing the emotional distress suffered by any one of the 57 different Plaintiffs; rather, the allegation is simply made for the group as a whole….").

Further, while Plaintiffs allege that Blastco was negligent in numerous ways, their Complaint does not allege that any Plaintiff observed the negligent act that started the fire—the Blastco employee dropping the heat gun into the vat of resin. That is, Plaintiffs allege that they saw the consequences of the negligent act, not the negligent act itself.

Additionally, although the Complaint alleges a familial relationship between Butler and the Book plaintiffs and between Burgueno and Barrios, the Complaint does not allege that Blastco knew of these relationships. <u>See</u>

Doc. 1 at ¶ 29 (alleging that Blastco "could easily observe that Plaintiffs knew one another and the deceased…").

Finally, with respect to the additional Plaintiffs, they have not alleged an "unusually close relationship" with Butler and Burgueno.[10] Rather, Plaintiffs allege that they were "long-time friends and co-workers of the deceased." Doc. 1 at ¶ 31; cf. <u>Riddle</u>, 256 N.C. App. at 77 (allegation that plaintiff was a teammate and friend was insufficient).

## VI. Recommendation

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Universal Blastco's Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 32) be **GRANTED** as follows:

1. That Damien A. Barrios' claim for negligent infliction of emotional distress be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction, or, in the alternative, that it be dismissed with prejudice for failure to state a claim; and

---

[10] Plaintiffs have not provided authority indicating that claimants who are not family members may make an emotional distress claim.

2. That all other Plaintiffs' claims for negligent infliction of emotional distress be **DISMISSED WITH PREJUDICE** for failure to state a claim.

Signed: September 22, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).